842 F.2d 332
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wilma J. O'NAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-2139.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a social security case in which the plaintiff, Wilma J. O'Nan, sought judicial review of the Secretary's decision to deny her application for disability insurance benefits. Mrs. O'Nan claimed that she had been unable to work since May of 1974 because of severe back and leg pain. Finding that she had retained the capacity to perform sedentary work, an administrative law judge denied benefits. The district court, rejecting a magistrate's report and recommendation, agreed with the ALJ and dismissed the plaintiff's complaint. Upon review of the record, we conclude that the ALJ's decision to deny benefits was not supported by substantial evidence.
 
 
 2
 The plaintiff, who was born on July 6, 1934, completed ten years of school. She was employed by Chrysler Corporation as a factory worker until 1974, when she injured her back at work. Under 42 U.S.C. Secs. 416(i) and 423, the plaintiff last met the earnings requirement on September 30, 1981. In order to show entitlement to disability benefits, she must show that she became unable to engage in substantial gainful activity no later than that date.
 
 
 3
 The plaintiff filed for disability benefits in 1975 and was granted a closed period of benefits from May 24, 1974, to October 19, 1976. In April 1978 an ALJ affirmed the termination of her benefits in a decision that the plaintiff did not appeal. She filed a new application for benefits on August 1, 1979, and appealed the denial of this application to the district court.
 
 
 4
 A magistrate to whom the case was referred recommended that the denial of benefits be reversed and that the plaintiff's motion for summary judgment be granted. The recommendation was rejected by the district court, which found that substantial evidence supported the Secretary's decision. The court remanded the case, however, for a determination as to whether the plaintiff still retained the residual functional capacity to perform sedentary work.
 
 
 5
 On remand the ALJ found that although the medical evidence established that the plaintiff has a "severe impairment which consists of chronic low back pain with radiation of the pain down her lower extremities plus nerve root irritation at the L4-S1 level," this impairment did not qualify as a listed impairment as of September 30, 1981. The ALJ noted that during the two hearing sessions the plaintiff "did not appear to be in acute distress or pain," and he found her testimony concerning her subjective complaints to be "exaggerated and not credible." Because he found that as of September 30, 1981, she retained the capacity to perform the full range of sedentary work, he determined that she was not disabled. The Appeals Council declined review.
 
 
 6
 When the plaintiff returned to the district court, the case was referred to a second magistrate. Like her predecessor, the second magistrate found that the ALJ's decision was not supported by substantial evidence. The district court again disagreed, concluding that the magistrate had failed to give proper deference to the ALJ's finding on the credibility of the plaintiff's subjective testimony. The district court denied the plaintiff's motion for summary judgment and dismissed the complaint. This appeal followed.
 
 
 7
 The plaintiff testified that she suffers from severe back and leg pain and has difficulty sitting. The medical evidence suggests that she has a disc herniation. Dr. Sublia, a physician who examined her at North Detroit General Hospital on July 21, 1980, formed the "diagnostic impression" that the plaintiff had a lumbar disc protrusion. Joseph Berke, M.D., a neurologist, treated the plaintiff for a number of years. In his reports of 1980 and 1981, he found that she had a limited range of motion in her lumbar spine, forward flexion was limited to 30 degrees, and there was an absence of the right achilles reflex. The straight leg raising test was positive for low back pain, Dr. Berke reported, and an electromyogram (EMG) showed evidence of nerve root abnormality bilaterally at the L5-S1 level. X-rays revealed some hypertrophic spurring at the L3-L4 level. A lumbar bone scan was negative for abnormality. In 1981 Dr. Berke recommended hospitalization.
 
 
 8
 The results of a physical and neurological examination conducted by Dr. Berke in 1982 were essentially identical to those of his 1981 examination. He diagnosed the plaintiff's condition as "lumbar disc protrusion and lumbar root abnormality" and recommended conservative treatment. Concerning the plaintiff's activity level, Dr. Berke stated that she would be unable to perform any activities requiring bending, lifting and twisting.
 
 
 9
 In 1983 a medical advisor, Robert A. Sobel, M.D., suggested obtaining additional physical and neurological examinations, including an EMG. The plaintiff was then examined at the court's request by R. Sil, M.D., a neurologist. The examination was hampered by the fact that the plaintiff complained of constant pain of such severity that she literally had to be carried out of the examining room. The plaintiff said that her lower back pain had been aggravated a week earlier, but she had not seen a doctor because she had no insurance. Dr. Sil described her pain as "agonizing" and "excruciating."
 
 
 10
 Dr. Sil was unable to complete muscle testing. He found no evidence of muscle spasm or atrophy, however, and, unlike Dr. Berke earlier, he found the presence of bilateral achilles reflexes. The plaintiff complained of a loss of sensation in both legs and in parts of her back. Although there were no anatomical correlations for the loss of sensation, Dr. Sil noted that severe pain could account for such a loss.
 
 
 11
 Dr. Sil completed a medical assessment form in which he indicated that due to her severe pain, the plaintiff could not engage in work-related physical activities that involved sitting, lifting, carrying, standing, walking, handling objects, bending, pushing or pulling.
 
 
 12
 An EMG performed on January 20, 1984, revealed abnormalities consistent with nerve root irritation and S1 radiculopathy. For this test the plaintiff was able to perform straight leg raising tests to 40 degrees; seven days earlier she had been unable to do that.
 
 
 13
 At a hearing two months later, the medical advisor, Dr. Sobel--who never personally examined the plaintiff--interpreted the EMG as "abnormal" and indicating "some degree of irritation in the sciatic nerve." He testified that the accuracy rate of an EMG is about 75 percent, and said that it was "difficult to determine from an EMG just how severe the impairment may be because it's not a one-to-one relationship." He also described the EMG results as a "minimal finding." Although Dr. Sobel thought a myelogram performed in 1979 was normal, he pointed out that "some bulging discs or suspicions of discs" were noted in the report on a myelogram performed in 1977.
 
 
 14
 The ALJ found that the plaintiff's testimony concerning her subjective complaints was not credible, and he therefore concluded that she continued to have the residual functional capacity to perform sedentary work. He based his credibility determination at least in part on his own observation that, during the two hearing sessions, the plaintiff did not appear to be in acute distress or pain. He interpreted Dr. Berke's limitations on activity as suggesting that the plaintiff would be capable of sedentary activities, and noted that Dr. Berke had recommended conservative treatment rather than surgical intervention. As for Dr. Sil's evaluation of excruciating pain, he discounted this assessment as "totally based on the credibility of the claimant's complaints."
 
 
 15
 On appeal, the Secretary cites Duncan v. Secretary of HHS, 801 F.2d 847, 853 (6th Cir.1986), in which this court set forth a two-part test for evaluating subjective complaints. Under this test the court examines first whether there is objective medical evidence of an underlying medical condition. If there is, the court then considers (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, and (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Id. at 853. The Secretary argues that only the first part of the test has been satisfied in the instant case. He agrees that the plaintiff suffers from a back impairment diagnosed as a "lumbar disc protrusion," but he contends that the objective evidence fails to confirm the severity of the plaintiff's complaints.
 
 
 16
 In Duncan none of the physicians diagnosed the claimant's pain as severe or disabling. In the present case, by contrast, the reports of both Dr. Berke and Dr. Sil support the plaintiff's subjective complaints. Here the ALJ evidently discounted the physicians' findings on the basis of his own observations and skeptical view of nonsurgical treatment. As we read the record in this particular case--and each case is unique, of course--the ALJ had no adequate basis for concluding that the plaintiff was not disabled as of September 30, 1981. There can be no question that this lady had a bad back, and we are not prepared to say that she had to submit to the surgeon's knife in order to prove it.
 
 
 17
 We therefore REVERSE the judgment of the district court and REMAND the case for entry of a judgment directing an award of benefits from a date no later than September 30, 1981.
 
 
 18
 WELLFORD, Circuit Judge, dissenting.
 
 
 19
 O'Nan's claim for benefits was denied in 1978 and she took no appeal from this denial. Instead, in August of 1979, O'Nan filed another application for benefits, which was, again, denied by an Administrative Law Judge. The district court remanded the matter for consideration of evidence presented after the hearing before the ALJ. Upon reconsideration and a further hearing, once again the Secretary denied the claim of disability under the Act. In late June of 1979 O'Nan was hospitalized with back pain. An EMG was performed "which was essentially within normal limits." (J/A 108) "Some improvement" was noted after conservative treatment; a "lumbar strain" was diagnosed. (J/A 108, 112) Dr. Elizabeth Edmond in July of 1979 noted no particular objective condition as a consequence of her tests. (J/A 113)
 
 
 20
 Dr. Lawrence Weisman at about the time found no x-ray indication of "dislocation," of the spine but noted "rotatory scoliosis in the dorsal spine," noted back strain and a poor prognosis. (J/A 117) Dr. Berke examined her and found no nerve root abnormalities and that she could perform leg raising up to 60 degrees before "low back pain." (J/A 118)
 
 
 21
 This evidence recited was ample to find no established disability at the time O'Nan's 1979 claim for disability was filed. Late in 1979 Dr. Weisman made a similar diagnosis including "right scapular costal syndrome." (J/A 120) Despite being a heavy smoker O'Nan was obese and gaining weight. She was put on a weight reduction diet in 1980. (J/A 140) Dr. Remsperger in July 1980 after examination found that O'Nan showed "a rather satisfactory range of motion with 75 degrees extension and 90 degrees rotation," a distinct improvement from the 1979 examinations. (J/A 122) Dr. Remsperger further observed that "all reflexes are normal and sensation shows adequate." (J/A 122) He indicated in this report that O'Nan seemed to be exaggerating her responses and performed better "when her attention was distracted ... without any pain response." (J/A 122) X-rays showed "satisfactory alingment." In sum, the objective clinical findings could not be "correlated to the degree of her complaints." (J/A 123) At this time another doctor indicated, for the most part, moderate or mild restriction of activities. (J/A 124) Through July of 1980, then it seems clear to me also that there was substantial evidence to support a denial of benefits, although there was contrary evidence, as noted by Judge Nelson (Dr. Berke's 1980 and 1981 reports).[1]
 
 
 22
 A hospital report indicated improvement in the amount of claimed pain after conservative physiotherapy and O'Nan was placed on a weight reduction program. Before the remand to consider evidence after eligibility terminated, September 30, 1981, it seems clear that the district court was correct in denying plaintiff's claim. He remanded, however, for consideration of other evidence.
 
 
 23
 At the subsequent hearing, Dr. Sobel testified after reviewing all the medical records pertinent to 1979 through 1981. He was of the opinion that as late as 1980 [August] her neurological examination was entirely negative. (J/A 205 emphasis added). He also believed that a 1979 myleogram was normal and that Dr. Berke's EMG finding was "minimal." (J/A 209, 210) Again, Dr. Berke's 1982 opinion was to the contrary.
 
 
 24
 I would agree with Judge DeMascio that "the Administrative Law Judge [both of them] carefully considered the plaintiff's subjective testimony of pain and discomfort" and that there was "substantial evidence" which supported a denial of benefits as of September 30, 1981. I believe the 1984 information is much less reliable than the material heretofore noted relating to the pertinent period, 1979-1981. The 1984 data reveals that O'Nan continued to gain weight and complained even more about her condition; she had no muscle atrophy, and Dr. Sil had a difficult time finding "anatomical correlations" to account for her increased claims of pain. (J/A 229)
 
 
 25
 I would AFFIRM the decision of the district court. In the alternative, if an award is to be made, it should not be made for any period prior to 1981 based on the record before us.
 
 
 
 [1]
 Dr. Berke's August 1980 report indicated a "limited lumbar range of motion with tenderness" and "spurring" revealed by x-rays, but "lumbar bone scan was essentially negative." O'Nan was found unable to return to her past vocational activity. Surgery was a future option